# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10

**SUPERIOR COURT OF WASHINGTON**
**FOR KING COUNTY**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| DALANA BROWN,<br>for herself, as a private attorney general, and/or<br>on behalf of all others similarly situated,<br><br><br><br>Plaintiff,<br><br>v.<br><br><br>LA-Z-BOY INCORPORATED and<br>STITCH INDUSTRIES, INC.,<br><br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, AND THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.190** |

Plaintiff Dalana Brown ("Ms. Brown"), demanding trial by jury as to all issues so triable in a separate document to be filed, alleges as follows, on personal knowledge and upon the investigation of her counsel, against La-Z-Boy Incorporated ("La-Z-Boy") and Stitch Industries, Inc., d/b/a Joybird ("Joybird") (collectively, "Defendants"):

## INTRODUCTION AND SUMMARY

1.      This is a class action against Joybird for false or misleading email marketing in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, and the Washington Commercial Electronic Mail Act, ("CEMA"), RCW 19.190.

2.      Joybird is a direct-to-consumer manufacturer and e-commerce retailer of upholstered furniture including sofas, sectionals, and other furniture. Joybird primarily sells its products on the Joybird website, www.joybird.com. All the items offered for sale by Joybird, and advertised in its email marketing, are manufactured by Joybird and are offered and sold exclusively by Joybird.

3.      For years, Joybird has engaged in a massive and consistent false discount advertising scheme across its website, in its retail stores, and in its marketing emails. Specifically, Joybird advertises perpetual or near-perpetual discounts—typically 30% to 50% off—on all its products. These discounts are taken from Joybird's inflated and self-created list prices for its products. Joybird's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from Joybird's own regular offering prices for the products. However, Joybird's advertised discounts are false because Joybird never or almost never offers or sells the products at their list price.

4.      Joybird also falsely advertises that the purported savings are for a limited time and indicates that its products will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

5.      An important part of Joybird's false discount advertising scheme is to send a constant stream of marketing emails to consumers that prominently advertise these false discounts in the subject line. Many of the consumers who receive these emails with deceptive email subject lines are Washington residents.

**HATTIS LUKACS & CORRINGTON**
1711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

6.      For example, Joybird sends emails with subject lines that advertise false discounts at a specified purported percentage off (e.g., "🌼 **Fresh Finds - 30% off EVERYTHING!**"). The stated discounts in the subject lines are materially false or misleading because, in reality, the discounts are being calculated from inflated and fictitious list prices at which Joybird has never or almost never offered its products for sale.

7.      The subject lines of the emails are also materially false or misleading because they advertise that the purported savings are for a limited time and indicate that the products will return to the full price after the sale ends (e.g. "🐵 **Last day to save 30% on your new sofa!**"), when in fact the advertised savings are perpetual and never-ending.

8.      The Washington Supreme Court recently held that CEMA "prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). This includes false or misleading information about promotions, sales events, or discounts. **"CEMA protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line."** *Id*. "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* at *2.

9.      Ms. Brown brings this lawsuit individually and on behalf of a class of consumers residing in Washington who also received emails from Joybird which contained false or misleading discount advertising in the subject line. Ms. Brown's requested relief includes an injunction to end the unlawful practices alleged herein. Ms. Brown also requests an award to herself and to each class member of $500 in statutory damages for each and every violative email received, and an award of attorneys' fees and costs.

## THE PARTIES

10.      Plaintiff Dalana Brown is a citizen and resident of the city of Bellevue, in King County, Washington.

11.      Ms. Brown has been receiving Joybird's promotional emails ever since she signed up for Joybird's mailing list in or around 2022, when she visited the Joybird website and

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

was considering purchasing a product from Joybird. Since she signed up for the mailing list, Ms. Brown has received all of the violative emails described herein.

12.    Defendant La-Z-Boy Incorporated ("La-Z-Boy") is a Michigan corporation headquartered at One La-Z-Boy Drive, Monroe, Michigan 48162. La-Z-Boy is one of the nation's leading furniture manufacturers and retailers of upholstered furniture including reclining chairs, sofas, and loveseats in the United States. La-Z-Boy acquired Stitch Industries, Inc. d/b/a Joybird on July 30, 2018.

13.    Plaintiff alleges that La-Z-Boy dominates, controls, and/or operates Stitch Industries, Inc., based on the following facts: La-Z-Boy states that Stitch Industries is a wholly owned subsidiary; Stitch Industries, Inc. lists its corporate address with the Washington Secretary of State as being La-Z-Boy's headquarters at One La-Z-Boy Drive, Monroe, Michigan 48162; the footer of the Joybird website states "Joybird, a La-Z-Boy Incorporated Company"; and the La-Z-Boy website lists Joybird as one of "our brands." Based on information and belief, La-Z-Boy directed or assisted the marketing operations of the Joybird brand and the perpetration of the unlawful actions described herein—including the creation and sending of the violative emails.

14.    Defendant Stitch Industries, Inc. d/b/a Joybird is Delaware corporation and a wholly-owned subsidiary of La-Z-Boy since its acquisition by La-Z-Boy in July 2018.[1] Joybird was established in 2014 with headquarters in Commerce, California prior to being acquired by La-Z-Boy. Joybird now shares headquarters with La-Z-Boy at One La-Z-Boy Drive, Monroe, Michigan 48162. Joybird is a direct-to-consumer e-commerce retailer and manufacturer of upholstered furniture and primarily conducts its sales through its website, www.joybird.com. Joybird also has 14 physical retail stores across the United States, including one in Seattle, Washington. These retail stores are all owned and operated by La-Z-Boy.

---

[1] See La-Z-Boy press release regarding its acquisition of Joybird at https://lazboy.gcs-web.com/news-releases/news-release-details/la-z-boy-acquire-e-commerce-retailer-joybird (last accessed September 26, 2025).

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

15.     La-Z-Boy Incorporated and Stich Industries, Inc. are collectively referred to as "Joybird" or "Defendants" in this Complaint.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this civil action pursuant to, without limitation, Section 6 of Article IV of the Washington State Constitution (Superior Court jurisdiction, generally), RCW 19.86.090 (Superior Court jurisdiction over Consumer Protection Act claims) and RCW 19.190.090 (Superior Court jurisdiction over Commercial Electronic Mail Act claims).

17.     This Court has personal jurisdiction over Defendants pursuant to, without limitation, RCW 4.28.185, in that: (1) Defendant Stitch Industries, Inc., d/b/a Joybird is registered to do business in the State of Washington; (2) both Defendants have transacted and continue to transact business within the State of Washington; and/or (3) both Defendants have committed tortious acts within the State of Washington or have committed tortious acts outside the State of Washington which had an impact within the State of Washington. In addition, Defendants intended, knew, or are chargeable with the knowledge that their out-of-state actions would have a consequence within Washington.

18.     With regard to the cause of action brought pursuant to the Washington Consumer Protection Act, this Court has personal jurisdiction over Defendants pursuant to RCW 19.86.160. For example, and without limitation, Defendants have engaged and are continuing to engage in conduct in violation of RCW 19.86 which has had and continues to have an impact in Washington State which said chapter reprehends, including operating the Joybird website which sells goods to Washington consumers, sending marketing emails to Washington consumers, and operating one Joybird retail store in Washington state.

19.     Venue is proper in King County Superior Court because, without limitation, Plaintiff resides in King County; a significant portion of the acts giving rise to this civil action occurred in King County; and/or Defendants intended to and did have a substantial and foreseeable effect on trade or commerce in King County, including operating the Joybird website which sells goods to Washington consumers in King County, sending marketing emails

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

to Washington consumers in King County, and operating one Joybird retail store in King County, Washington.

## **FACTUAL ALLEGATIONS**

20.     Joybird is a direct-to-consumer manufacturer and e-commerce retailer of upholstered furniture including sofas, sectionals, and other furniture. Joybird primarily sells its products on the Joybird website, www.joybird.com, though there are also currently 14 Joybird retail stores across the United States, including one in Seattle, Washington. All the items offered for sale by Joybird on its website, in its retail stores, and advertised in its email marketing, are manufactured by Joybird and are offered and sold exclusively by Joybird.

21.     Defendants own and operate the Joybird brand, including the Joybird website, retail stores, and marketing operations.

22.     The Joybird website is accessible from Washington State, and consumers in Washington State view the contents of and purchase goods from the Joybird website. Joybird sends marketing emails to consumers throughout the country, including thousands of consumers in Washington State.

**A.     Background Information: Joybird's Advertised Discounts Are False.**

23.     For years, Joybird has engaged in a massive and consistent false discount advertising scheme both on its website and in its retail stores. Specifically, Joybird advertises perpetual or near-perpetual discounts—typically 30% to 50% off—on all of its products. These discounts are taken from Joybird's advertised list prices for its products. Joybird's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from Joybird's own regular offering prices for its products. However, Joybird's advertised discounts are false. Joybird never or almost never offers or sells its products at their list price on its website or in its retail stores.

24.     Joybird also falsely advertises that the purported savings are for a limited time and indicates that its products will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

CLASS ACTION COMPLAINT - 5

25.     Plaintiff's allegations concerning Joybird's false discount advertising are based in part on Plaintiff's counsel's investigation of Joybird using the Internet Archive's Wayback Machine (available at www.archive.org).[2] Plaintiff's allegations are also based on Plaintiff's counsel's own monitoring and scraping of approximately 800 products per day from the Joybird website with a proprietary software program since December 15, 2024, including time-stamped screenshots of each product.

26.     Counsel's investigation confirms that Joybird's perpetual sales have persisted continuously since at least September 2021. Plaintiff's counsel examined over a hundred randomly selected screenshots of the Joybird website from the Internet Archive's Wayback Machine, going back to 2021. Every one of the randomly selected screenshots displayed a sitewide and purportedly time-limited discount and/or individual product discounts. Likewise, counsel's analysis of the screenshots and the extracted pricing data collected with and compiled by counsel's proprietary software program shows that Joybird's perpetual "sales" and false discounts continue to this day.

27.     Plaintiff's counsel has also investigated and reviewed years of marketing emails sent by Joybird to its customers. The percentage-off discounts which Joybird advertised, and continues to advertise, in the subject lines of its marketing emails are consistent with the false discounts and pricing on the Joybird website.

28.     Plaintiff's counsel has also made multiple visits over multiple months to the Joybird retail store in Seattle, Washington since January 24, 2025. On each visit, Plaintiff's counsel has compared the Joybird retail store prices and discounts (including sale event advertising, the percentage-off signage posted throughout the store and beside the furniture products, the reference prices, and the resulting "discounted" prices for the products), to the Joybird website prices and discounts for those products (including the website-wide sale event advertising, list prices, and "discounted" prices). Plaintiff's counsel has found that Joybird's website-wide and store-wide sales events, list prices, advertised percentage-off and free-offer

---

[2] The Internet Archive is an internet library that archives webpages. For more information: https://archive.org/about/.

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

discounts, and the resulting "discounted" prices for its products have been and continue to be substantially the same for its products both online and in-store. Furthermore, the signage in-store typically advertises how the same percentage-off discounts and sale prices are effective both in-store and online. For example, **"HURRY – LIMITED TIME OFFER HAPPENING NOW 30% OFF IN-STORE & ONLINE."**

29.     Joybird's false discount advertising is so pervasive across all of its products and in all of its advertising and promotional emails that it is apparent that the heart of Joybird's marketing plan is to deceive the public.

30.     Joybird advertises these false and deceptive discounts because they work and increase sales and profits. Decades of academic research has established that the use of discount advertising like that utilized by Joybird materially impacts consumers' behavior by affecting the consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[3]

---

[3] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

HATTIS LUKACS & CORRINGTON
1711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

31.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

32.     The Ninth Circuit has also acknowledged and explained how false discount advertising materially affects consumer behavior: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

**B.     CEMA Prohibits Sending Washington Residents Commercial Emails With False Or Misleading Subject Lines.**

33.     Washington's Commercial Electronic Mail Act (CEMA) regulates deceptive email marketing.

34.     CEMA prohibits a person from initiating or conspiring to initiate the transmission to an email address that the sender knows, or has reason to know, is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b).

35.     The Washington Supreme Court has recently confirmed that CEMA "prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). This includes false or misleading information about promotions, sales, or other pricing information. **"CEMA protects consumers by requiring**

HATTIS LUKACS & CORRINGTON
1711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1    **that commercial e-mails communicate honestly about the terms of a given promotion or**

2    **sale in the subject line."** *Id.*

3        36.    "CEMA was enacted to protect concrete interests in being free from deceptive

4    commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or

5    misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-

6    mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. Nov. 27, 2019)

7    (holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA

8    violations based on her receipt of marketing emails from defendant containing allegedly false

9    "xx% off" statements in the subject line).

10        37.    An injury occurs any time a commercial email is transmitted that contains false

11    or misleading information in the subject line. *Harbers*, 415 F. Supp. 3d at 1011. Under CEMA,

12    it is irrelevant whether the misleading commercial emails were solicited. *Id.*

13        38.    "A violation of CEMA's e-mail regulations is a per se violation of the Consumer

14    Protection Act (CPA)." *Brown*, 567 P.3d at 42.

15        39.    Generally, a plaintiff pleading a claim under the CPA must plead five necessary

16    elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the

17    public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft,*

18    *Inc.*, 189 Wn.2d 718, 728 (2017). **However, because a violation of CEMA is a per se**

19    **violation of the CPA, all five elements are satisfied as a matter of law.** *Id.* at 724; *see also*

20    *Brown*, 567 P.3d at 42.

21        40.    "Under CEMA, the injury is receiving an e-mail that violates its regulations."

22    *Brown*, 567 P.3d at 42. Accordingly, **"CEMA does not require a showing of injury for**

23    **statutory damages to be awarded because the injury is receiving the e-mail that violates**

24    **CEMA."** *Id.* at 45; *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition the award

25    of damages on proving either injury or causation. In fact, damages for CEMA violations are

26    *automatic*.") (emphasis in original).

27        41.    A person is entitled to $500 statutory damages "anytime a prohibited message is

28    transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*,

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

No. C09-45RAJ, 2011 WL 744664, at *7 (W.D. Wash. Feb. 23, 2011) ("[CEMA] provides statutory damages of $500 for every email that violates it."). "Unlike the CPA, CEMA's $500 penalty does not require a showing of actual damages." *Brown*, 567 P.3d at 42.

**C.    Joybird Has Transmitted Numerous Commercial Emails With False Or Misleading Subject Lines In Violation Of CEMA.**

42.    Joybird has transmitted numerous commercial emails with false or misleading subject lines to Plaintiff and other Washington residents in violation of CEMA. (As used in this Complaint, allegations that Joybird "transmitted" or "sent" an email are allegations that Joybird initiated the transmission of the email, conspired with another to initiate the transmission of the email, and/or assisted the transmission of the email.)

43.    Joybird transmits commercial emails with subject lines advertising large percentage-off discounts (typically 30% to 50% off). These email subject lines are materially false or misleading in violation of CEMA and the CPA because the advertised percentage-off discounts are phony and are calculated from inflated and fictitious list prices at which Joybird never or almost never offered its Products.

44.    Based on the investigation of Plaintiff's counsel, Joybird sent Washington State residents, including Plaintiff after she began receiving Joybird's promotional emails in 2022, hundreds violative percentage-off emails. The following is a non-exhaustive list of such emails sent on the date, and containing the email subject line, specified below:

| **Date** | **Email Subject Line** |
| --- | --- |
| 09/25/2025 | Transform your space with up to 40% off! |
| 09/22/2025 | 🔥 Last day to save 30% off sofas & sectionals! |
| 09/11/2025 | ✉ 30% off all sofas & sectionals |
| 09/10/2025 | ⚡FLASH SALE: Up to 40% off leather & dining pieces |
| 08/17/2025 | 🏠 Up to 40% Off? Gone After Tonight. |
| 08/07/2025 | 🟡Best Sellers: Now up to 40% off |
| 08/06/2025 | FLASH SALE: Up to 40% off Daybeds, Chaises & Chairs! |

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| 08/03/2025 | 👋 Say goodbye to 30% off |
| 07/23/2025 | 🎁 Just for you - 30% off! |
| 07/20/2025 | 🕵 Up to 40% off disappears tonight! |
| 07/06/2025 | One More Chance: Up to 50% Off Ends Tonight |
| 07/05/2025 | Up to 50% Off + Fast Delivery? Yes Please. |
| 06/01/2025 | 😱 Last chance to shop deals up to 50% off |
| 05/27/2025 | 🛍 Exclusive offer for you - up to 50% off bundles |
| 05/11/2025 | 😱 LAST DAY: 30% off your order |
| 03/04/2025 | 😱 Last day to save 30% on your new sofa! |
| 02/24/2025 | 😱 Final Hours: Up to 45% off Best Sellers |
| 02/17/2025 | ⚠️ 45% off select best sellers ENDS TONIGHT! |
| 02/06/2025 | [name] - don't miss out on up to 45% off! |
| 01/23/2025 | 🌟 Fresh Finds - 30% off EVERYTHING! |
| 01/09/2025 | 🛍 Exclusive offer for you VIP - up to 40% off |
| 01/07/2025 | 💥 Flash Sale alert - up to 40% off leathers & dining! |
| 10/28/2024 | 👋 Last chance to save 35% on sectionals! |
| 10/08/2024 | 🚨 FLASH SALE: Up to 40% off select bedroom & sleepers |
| 10/06/2024 | 👋 Say goodbye to savings up to 40%! |
| 09/05/2024 | 🚀 The deals are skyrocketing - up to 50% off! |
| 08/07/2024 | 🛋 Flash Sale - Up to 40% off daybeds, chairs & chaises |
| 07/28/2024 | 🏃 Hurry - last day to save up to 40%! |
| 07/16/2024 | 💥 Flash Sale deals up to 40% off! |
| 07/03/2024 | ⏰ Don't let the clock run out on 45% off! |
| 06/16/2024 | 📢 Last call! Up to 40% off |
| 06/02/2024 | 🏃 ENDS TONIGHT: Deals up to 50% off! |
| 04/28/2024 | Re: Your opportunity to save 40% |
| 03/17/2024 | 🔔 Last day to save 30% sitewide! |

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| 02/05/2024 | ⏰ Time is almost up on 30% off sitewide |
| 01/22/2024 | 👋 Say goodbye to up to 35% savings... |
| 01/08/2024 | 👀 Last day to save up to 40%! |
| 12/28/2023 | 🌎 Year End Sale starts today! Up to 40% off |
| 12/26/2023 | 🎁 Last day to unwrap 30% off sitewide |
| 12/15/2023 | 🎄 Save 30% sitewide during the Holiday Home Sale! |
| 12/03/2023 | 😊 1 more day! Up to 45% off... |
| 09/20/2023 | ⚡Flash sale deals up to 40% off! |
| 07/20/2023 | 🤝 30% off...since we're friends! |
| 01/23/2023 | 🏃Hurry! Up to 40% Off Ends Tonight |
| 12/26/2022 | 🕐 Time is Running Out to Save Up to 35%! |
| 12/12/2022 | ⏰ Time is Running Out on 30% Sitewide Savings! |
| 11/07/2022 | 🚨 Last Day to Save 30% Sitewide 🚨 |
| 10/27/2022 | Spruce Up Your Space & Save 30%! |
| 09/24/2022 | Dining Rooms That Impress + 25% Off Sitewide |
| 09/23/2022 | ⚡Flash Sale Happening Now \| Up to 50% off |
| 09/18/2022 | Fall into Velvet + Take 30% Off Sitewide |
| 09/12/2022 | FLASH SALE: Up to 45% Off Ends Tonight |
| 09/08/2022 | End of Summer? No Problem: Take 30% off Sitewide |
| 08/20/2022 | Staying Chic in Small Spaces + 30% off Sitewide |
| 07/21/2022 | The Heat is On: 30% Off Sitewide Starts Today! |
| 07/17/2022 | Your Last Chance to Get Up to 35% off... |
| 06/29/2022 | Perfect Your Patio: 35% off Sitewide |
| 06/23/2022 | Happy 4th: Save 35% off Sitewide Now! |
| 06/12/2022 | Maximize Coziness – 30% off Ends Tonight! |
| 06/11/2022 | The Velvet Touch — On Everything! Save 30% |
| 05/30/2022 | One More Day: 35% off Sitewide Extended! |

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 02/10/2022 | Get VIP Access to 35% Off Sitewide |
| 11/30/2021 | LAST. CHANCE. 35% off sitewide 🚨 |
| 11/29/2021 | Ends Tonight! 35% Off Sitewide + 50% Off Flash Sale |
| 11/27/2021 | Going Fast! 35% OFF SITEWIDE |
| 11/08/2021 | Last Chance - 30% Sitewide Savings Ends Tonight! |
| 11/02/2021 | 30% off Sitewide: Don't Snooze on Sleep-In Sale! |
| 09/30/2021 | Give It The It-Factor and Save 30% Sitewide! |
| 09/25/2021 | Refresh Your Space Sale - Save 25% Sitewide! |

45.     The above violative emails are only a fraction of the total number of such violative emails from Joybird sent to Washington State residents within the applicable limitations period.

46.     Attached as **Exhibit A** to this Complaint is a non-exhaustive list of 188 such violative emails that Joybird has sent within the applicable limitations period to Washington State residents, including Plaintiff. All of these 188 emails contain subject lines which advertise false "xx% Off" offers, many of which are stated to only be available for a limited period of time.

47.     The advertised percentage-off discounts in these email subject lines are viewed both under the law and by reasonable consumers to refer to discounts from Joybird's own regular offering prices for its products. In reality, Joybird calculated the "xx% Off" statements from fictitious list prices at which Joybird never or almost never offered its products. Meanwhile, there was no qualifier or other indicator in the subject line to notify the email recipients that Joybird had assigned these words and symbols an invented or unusual subjective meaning rather than their ordinary or objective meaning.

48.     As of the date of the filing of this Complaint, Plaintiff is still receiving Joybird's commercial emails. Plaintiff would like to continue receiving Joybird's commercial emails, provided that the subject lines of the emails do not contain false or misleading information.

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**D.      Joybird Sent Commercial Emails To Consumers Whom It Knew, Or Had Reason To Know, Resided In Washington State.**

49.      Joybird sent the false and misleading commercial emails to email addresses that Joybird knew, or had reason to know, were held by Washington State residents (i.e., Plaintiff and members of the Class), because Joybird had a physical Washington State address that was associated with the recipient and/or Joybird had access to data regarding the recipient indicating that they were in Washington State. Joybird knew or should have known that Plaintiff and the members of the Class were residents of Washington State.

50.      For the overwhelming majority of its commercial email recipients, Joybird knows the state in which they reside because nearly all of the recipients have previously purchased products from Joybird and provided their billing and delivery information, have created online accounts with their contact information, or have signed up for Joybird's mailing list and provided their contact information.

51.      Joybird also has other methods by which it could have determined whether the consumers to whom it sent the violative emails resided in Washington. Discovery will show that Joybird employs methods to track the effectiveness of its marketing emails and to identify consumers who click on links contained in Joybird's marketing emails, including by identifying their physical location. Discovery will also show that Joybird utilizes online tracking technologies to identify and locate the consumers who click on links contained in Joybird's marketing emails and that visit the Joybird website. Joybird could have used the information obtained through these online tracking technologies to identify which consumers are in Washington.

52.      Additionally, Joybird knew, or had reason to know, that the email addresses were held by Washington residents because this information was available to Joybird upon request from the registrant of the internet domain name contained in each recipient's email address. See RCW 19.190.020(2). Joybird also knew or had reason to know that it sent emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country. See *State v. Heckel*, 122 Wash. App. 60, 69

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1    (2004) (holding as a matter of law that a defendant had a reason to know that he sent emails to

2    Washington residents by sending over 100,000 emails a week to people around the country).

3                                    **CLASS ALLEGATIONS**

4           53.    Plaintiff brings this lawsuit on behalf of herself and the members of the

5    following Washington State class (the "Class"):

> 6           **All residents of the State of Washington who, within the applicable**
> 7           **limitations period, received an email from or at the behest of**
>             **Defendants that contained in the subject line a "xx% Off" or similar**
> 8           **percentage-off statement.**

9           54.    Specifically excluded from the Class are the Defendants, any entity in which

10   Defendants have a controlling interest or which has a controlling interest in Defendants,

11   Defendants' agents and employees and attorneys, the bench officers to whom this civil action is

12   assigned, and the members of each bench officer's staff and immediate family.

13          55.    **Numerosity.** The number of members of the Class are so numerous that joinder

14   of all members would be impracticable. Plaintiff does not know the exact number of Class

15   members prior to discovery. However, based on information and belief, the Class comprises

16   thousands of individuals. The exact number and identities of Class members are contained in

17   Joybird's records and can be easily ascertained from those records.

18          56.    **Commonality and Predominance.** This action involves multiple common legal

19   or factual questions which are capable of generating class-wide answers that will drive the

20   resolution of this case. These common questions predominate over any questions affecting

21   individual Class members, if any. These common questions include, but are not limited to, the

22   following:

23          a.     Whether Defendants sent commercial emails with false or misleading

24   information in the subject lines;

25          b.     Whether Defendants initiated the transmission or conspired to initiate the

26   transmission of such commercial emails to recipients residing in Washington State;

27          c.     Whether Defendants should be ordered to pay statutory damages to

28   Plaintiff and Class members; and/or

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

d.    Whether Defendants should be enjoined from further engaging in the misconduct alleged herein.

57.    **Typicality.** Plaintiff's claims are typical of Class members' claims. Defendants transmitted, conspired to transmit, or assisted to transmit emails with false or misleading information in the subject line to Plaintiff and to each Class member. Plaintiff and Class members all bring the same claims and face the same potential defenses.

58.    **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

59.    **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Defendants' conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

60.    By its conduct and omissions alleged herein, Defendants have acted and refused to act on grounds that apply generally to the Class members, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

61.    Defendants are primarily engaged in the business of selling goods. Each cause of action asserted by Plaintiff against Defendants in this Complaint arises out of and is limited to communications related to Defendants' sale of goods.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Washington Consumer Protection Act**
**RCW Chapter 19.86**

62.     Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

63.     Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general, and as a proposed class representative serving on behalf of all others similarly situated.

64.     The Washington Consumer Protection Act (the "CPA"), RCW 19.86, is Washington's principal consumer protection statute. The CPA's primary substantive provision declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. RCW 19.86.020.

65.     The CPA recognizes and incorporates *per se* violations. "Per se CPA violations are predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *Brown v. Old Navy, LLC*, 567 P.3d 38, 46 (Wash. 2025). The Washington Legislature routinely prohibits certain specified conduct but, instead of, or in addition to, creating a new and independent private right of action to enforce the prohibition, the Legislature deems the unlawful conduct to be a *per se* violation of the CPA.

66.     If a defendant engages in that unlawful conduct, a plaintiff may file a CPA complaint alleging the *per se* violation and seek the remedies available under the CPA and/or the remedies available under the statute which forbids the *per se* violation. *See* Washington Pattern Jury Instruction Civil No. 310.03 (*Per Se* Violation of Consumer Protection Act) and Appendix H (Consumer Protection Act *Per Se* Violations).

67.     A plaintiff can plead a violation of the CPA by pleading that the CPA was violated *per se* due to a violation of the Washington Commercial Electronic Mail Act ("CEMA"). *See Brown*, 567 P.3d at 42 ("A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)."); *see also* RCW 19.190.030(1)(b) ("It is a violation of the consumer protection act, chapter 19.86 RCW . . . to initiate the transmission of

HATTIS LUKACS & CORRINGTON
1711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

a commercial electronic mail message that . . . [c]ontains false or misleading information in the subject line.").

68.     CEMA prohibits a person from initiating the transmission to an email address that the sender knows or has reason to know is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b). The Washington Supreme Court has held that this includes subject lines with **any** false or misleading information. *Brown*, 567 P.3d at 47 ("[CEMA] prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails.") (emphasis in original).[4]

69.     "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. Nov. 27, 2019) (holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "xx% off" statements in the subject line).

70.     Under CEMA, it is irrelevant whether the commercial emails were solicited. *Harbers*, 415 F. Supp. 3d at 1011.

71.     Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). **Because Plaintiff alleges a *per se* CPA violation by**

_____

[4] CEMA also prohibits a person from initiating the transmission from a computer located in Washington State of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.020(1)(b). Plaintiff is not alleging a CEMA violation under this prong because, as of the filing of this lawsuit, she does not possess information that the offending emails were transmitted from a computer located in Washington State. Plaintiff reserves the right to seek to amend this pleading in the event that she obtains information, through discovery or otherwise, which indicates that the offending emails were transmitted from a computer located in Washington State.

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1    alleging a CEMA violation, all of these five elements are satisfied as a matter of law. *Id.* at

2    724; *see also Brown*, 567 P.3d at 42.

3         72.      "Under CEMA, the injury is receiving an e-mail that violates its regulations."

4    *Brown*, 2025 WL 1132243, at \*2. Accordingly, **"CEMA does not require a showing of**

5    **injury for statutory damages to be awarded because the injury is receiving the e-mail that**

6    **violates CEMA."** *Id.* at 45; *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition

7    the award of damages on proving either injury or causation. In fact, damages for CEMA

8    violations are *automatic*.") (emphasis in original).

9         73.      A plaintiff who successfully pleads and proves a CEMA violation as a *per se*

10   violation of the CPA may recover the remedies which the plaintiff chooses to seek that are

11   available under the CPA (e.g., injunctive relief, treble damages, attorneys' fees and costs (RCW

12   19.86.090)) and/or the remedies available under CEMA (e.g., statutory damages of $500 per

13   email sent in violation of CEMA and injunctive relief (RCW 19.190.040, RCW 19.190.090)).

14         74.      **"Unlike the CPA, CEMA's $500 penalty does not require a showing of**

15   **actual damages."** *Brown*, 567 P.3d at 42. A person is entitled to $500 statutory damages

16   "anytime a prohibited message is transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re*

17   *Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 744664, at \*7 (W.D. Wash. Feb. 23,

18   2011) ("[CEMA] provides statutory damages of $500 for every email that violates it.").

19         75.      Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

20         76.      Defendants have initiated the transmission, conspired with another to initiate the

21   transmission, and/or assisted the transmission of numerous commercial emails with subject

22   lines containing false or misleading information to Plaintiff and the Class. RCW

23   19.190.030(1)(b).

24         77.      The subject lines of Joybird's emails contained materially false or misleading

25   information.

26         78.      The false or misleading information in the subject lines of Joybird's emails was

27   intended to, or had the capacity to, deceive a substantial portion of the public.

28         79.      The emails were electronic mail messages, in that they were emails sent to an

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1    email address; the emails also referred to an internet domain, whether or not displayed, to

2    which an email can or could be sent or delivered. RCW 19.190.010(5).

3        80.    The emails were "commercial electronic mail messages," in that they were sent

4    for the purpose of promoting goods or services for sale or lease. RCW 19.190.010(2).

5        81.    Joybird was the original sender of the emails.

6        82.    Plaintiff and the Class members each received the emails at their electronic mail

7    addresses, which are the destinations, commonly expressed as a string of characters, at which

8    they receive and to which electronic mail may be sent or delivered. RCW 19.190.010(4).

9        83.    Joybird initiated the transmission, conspired with another to initiate the

10    transmission, and/or assisted the transmission of the emails to one or more email addresses that

11    Joybird knew, or had reason to know, was held by a Washington State resident, i.e., Plaintiff

12    and members of the Class.

13        84.    At all relevant times, Joybird knew, or had reason to know, that the intended

14    recipients (Plaintiff and members of the Class) were residents of the State of Washington

15    because, without limitation: (1) Joybird possessed actual knowledge of Plaintiff's and each

16    Class member's state of residence; (2) Joybird possessed constructive knowledge of Plaintiff's

17    and each Class member's state of residence; (3) information was available to Joybird upon

18    request from the registrant of the internet domain name contained in each recipient's email

19    address; and/or (4) Joybird otherwise knew or should have known or had reason to know that

20    Plaintiff and the members of the Class were residents of the State of Washington.

21        85.    For example, without limitation, Joybird knew or had reason to know that it sent

22    emails to Washington residents because nearly all of the commercial email recipients had

23    previously purchased products from Joybird and provided their billing and delivery

24    information, had created online accounts with their contact information, or had signed up for

25    Joybird's mailing list and provided their contact information.

26        86.    Joybird engaged in a pattern and practice of violating CEMA. As a result of

27    Joybird's acts and omissions, Plaintiff and Class members are entitled to $500 in statutory

28    damages for each and every email that violated CEMA that was transmitted to them. Plaintiff

CLASS ACTION COMPLAINT - 20

1   and Class members are also entitled to recover actual damages, treble damages, and attorneys'

2   fees and costs, pursuant to RCW 19.86.090.

3        87.     Treble damages are appropriate under these circumstances because, without

4   limitation, Defendants' misconduct has been "an ongoing course of conduct affecting

5   thousands of consumers" and thus has a "strong public interest impact." *See Matheny v.*

6   *Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1225 (E.D. Wash. 2009).

7        88.     **Permanent public injunctive relief.** Plaintiff, acting as a private attorney

8   general, seeks public injunctive relief under the CPA to protect the general public from

9   Defendants' misconduct.

10       89.     The Washington Supreme Court treats consumers as "private attorneys general,"

11  and has held that consumers' ability to enjoin unlawful conduct is a primary purpose of the

12  CPA:

13          Private actions by private citizens are … an integral part of CPA enforcement.
            **Private citizens act as private attorneys general** in protecting the public's
14          interest against unfair and deceptive acts and practices in trade and commerce.
            **Consumers bringing actions under the CPA do not merely vindicate their**
15          **own rights; they represent the public interest and may seek injunctive**
            **relief even when the injunction would not directly affect their own**
16          **private interests**."

17  *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007) (emphasis added).

18       90.     This type of injunctive relief has been referred to as "public injunctive relief."

19  *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 90 (2017) ("[P]ublic injunctive relief

20  … is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten

21  future injury to the general public.") (quoting *Broughton v. Cigna Healthplans of California*, 21

22  Cal. 4th 1066, 988 P.2d 67, 74 (1999)). The *Broughton* court likewise referred to consumers

23  seeking public injunctive relief as "private attorneys general." *See Broughton*, 21 Cal. 4th at

24  1077.

25       91.     Defendants' misconduct, which affects and harms the general public, is ongoing

26  in part or in whole and even if such conduct were to cease, it is behavior that is capable of

27  repetition or re-occurrence by Defendants absent a permanent public injunction. Accordingly,

28

CLASS ACTION COMPLAINT - 21

Plaintiff seeks an order enjoining Defendants from committing the unlawful conduct alleged herein.

92.     The balance of the equities favors the entry of permanent public injunctive relief against Joybird. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Defendants' ongoing misconduct absent the entry of permanent public injunctive relief against Defendants.

93.     Plaintiff lacks an adequate remedy at law to prevent Defendants from engaging in the unlawful conduct alleged herein. Plaintiff continues to receive commercial emails from Joybird, and she wants to continue receiving commercial emails from Joybird in the future, provided that the subject lines of the emails do not contain false or misleading information. Plaintiff will be harmed if, in the future, she receives commercial emails from Joybird that have false or misleading information in their subject lines.

94.     Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent Defendants from engaging in their unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know how many violative emails Joybird will send Plaintiff in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful conduct, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Defendants.

### COUNT II
### Violation of the Washington Commercial Electronic Mail Act
### RCW Chapter 19.190

95.     Plaintiff realleges and incorporates by reference all paragraphs alleged hereinabove.

CLASS ACTION COMPLAINT - 22

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

96.     Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general, and as a proposed class representative serving on behalf of all others similarly situated.

97.     The Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, creates an independent private of right of action which can be asserted by, among others, a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1). It is Plaintiff's intent in this count to plead an independent CEMA cause of action only to the extent that it is recognized by law, e.g., when a plaintiff seeks injunctive relief. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 n. 3 (2017) ("we note that a plaintiff may bring an action to enjoin any CEMA violation."); *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1052 (W.D. Wash. 2015).

98.     Defendants have violated CEMA on the grounds alleged in Count I above.

99.     For the reasons alleged in Count I, Plaintiff seeks, and may obtain, a permanent public injunction against Defendants.

## PRAYER FOR RELIEF

A.     Plaintiff Dalana Brown, on behalf of herself and the proposed Class, requests that the Court order relief and enter judgment against Defendants La-Z-Boy Incorporated and Stitch Industries, Inc. d/b/a Joybird, as follows:

1.     Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2.     Permanently enjoin Defendants from engaging in the unlawful conduct alleged herein, pursuant to, without limitation, RCW 19.86.090; RCW 19.190.090(1);

3.     Order Defendants to pay Plaintiff and each member of the Class statutory damages of $500 for each and every commercial email that Defendants transmitted to them that contained false or misleading information in the subject line, in violation of CEMA pursuant to, without limitation, RCW 19.190.020(1)(b), RCW 19.190.030(1)(b), RCW

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1  19.190.040(1);

2          4.      Order Defendants to pay treble damages pursuant to RCW 19.86.090;

3          5.      Order Defendants to pay attorneys' fees, costs, and pre-judgment and

4  post-judgment interest to the extent allowed by law; and

5          6.      Grant such other relief as this Court deems just and proper.

6                          **DEMAND FOR JURY TRIAL**

7      Plaintiff demands trial by jury on all issues so triable.

8

9      Respectfully submitted on September 26, 2025, by:

10                          HATTIS LUKACS & CORRINGTON

11                          By: _____
                                Daniel M. Hattis

12

13                          By: _____
                                Che Corrington

14

15                          Daniel M. Hattis, WSBA No. 50428
                            dan@hattislaw.com

16                          Che Corrington, WSBA No. 54241
                            che@hattislaw.com

17                          11711 SE 8th Street, Suite 120
                            Bellevue, WA 98005

18                          Tel: 425.233.8650
                            Fax: 425.412.7171

19                          *Attorneys for Plaintiff*
20                          *and the Proposed Class*

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT - 24

# EXHIBIT A

# EXHIBIT A

# Violative Joybird Emails

|   | Date | Email Subject Line |
|---|------|---------------------|
| 1 | 09/25/2025 | Transform your space with up to 40% off! |
| 2 | 09/22/2025 | 🛍️ Last day to save 30% off sofas & sectionals! |
| 3 | 09/11/2025 | 🛋️ 30% off all sofas & sectionals |
| 4 | 09/10/2025 | ⚡FLASH SALE: Up to 40% off leather & dining pieces |
| 5 | 08/17/2025 | 📊 Up to 40% Off? Gone After Tonight. |
| 6 | 08/07/2025 | 🟧Best Sellers: Now up to 40% off |
| 7 | 08/06/2025 | FLASH SALE: Up to 40% off Daybeds, Chaises & Chairs! |
| 8 | 08/03/2025 | 👋 Say goodbye to 30% off |
| 9 | 07/23/2025 | 🎁 Just for you - 30% off! |
| 10 | 07/20/2025 | 📷 Up to 40% off disappears tonight! |
| 11 | 07/09/2025 | 👋 Hey! Don't miss out on up to 40% |
| 12 | 07/06/2025 | One More Chance: Up to 50% Off Ends Tonight |
| 13 | 07/05/2025 | Up to 50% Off + Fast Delivery? Yes Please. |
| 14 | 06/15/2025 | LAST DAY! up to 40% of best sellers |
| 15 | 06/05/2025 | 🏖️ up to 40% off starts TODAY! |
| 16 | 06/03/2025 | 🛋️ Up to 40% off & Ready to Ship |
| 17 | 06/01/2025 | 🙋 Last chance to shop deals up to 50% off |
| 18 | 06/01/2025 | 🛋️ 1 sofa + 1 ottoman = up to 50% off |
| 19 | 05/27/2025 | 🎁 Exclusive offer for you - up to 50% off bundles |
| 20 | 05/11/2025 | 🙋 LAST DAY: 30% off your order |
| 21 | 04/16/2025 | ☀️ Outdoor pieces up to 40% off! |
| 22 | 04/07/2025 | 🛋️ Online Warehouse Sale - up to 40% off |
| 23 | 03/06/2025 | ✨ The Style Event: up to 35% off |
| 24 | 03/04/2025 | 🙋 Last day to save 30% on your new sofa! |

# EXHIBIT A

## Violative Joybird Emails

|  | Date | Email Subject Line |
|---|---|---|
| 25 | 02/27/2025 | 🛋 Room Refresh: Save 30% on sofas & sectionals |
| 26 | 02/24/2025 | 🦉 Final Hours: Up to 45% off Best Sellers |
| 27 | 02/17/2025 | ⚠ 45% off select best sellers ENDS TONIGHT! |
| 28 | 02/06/2025 | Susan - don't miss out on up to 45% off! |
| 29 | 01/23/2025 | 🌟 Fresh Finds - 30% off EVERYTHING! |
| 30 | 01/13/2025 | 👋 Hey VIP - Don't miss out on up to 40% |
| 31 | 01/09/2025 | 🎁 Exclusive offer for you VIP - up to 40% off |
| 32 | 01/07/2025 | 💥Flash Sale alert - up to 40% off leathers & dining! |
| 33 | 01/06/2025 | 🔥Hot deal alert: Don't miss up to 40%! |
| 34 | 11/23/2024 | 🛋 Up to 45% off your new sofa...yes please! |
| 35 | 11/09/2024 | 🍁 Up to 45% off cozy space essentials |
| 36 | 11/04/2024 | 🛋 Save up to 45% on Ready to Ship pieces |
| 37 | 10/31/2024 | 😆 up to 45% off Ready to Ship?! |
| 38 | 10/28/2024 | 👋 Last chance to save 35% on sectionals! |
| 39 | 10/23/2024 | 😋 Entertaining Essentials: 35% off sectionals |
| 40 | 10/08/2024 | 🎏FLASH SALE: Up to 40% off select bedroom & sleepers |
| 41 | 10/06/2024 | 👋 Say goodbye to savings up to 40%! |
| 42 | 09/22/2024 | 🛋 Your last chance to save 30% on sofas & sectionals! |
| 43 | 09/10/2024 | 😍 Up to 40% off: leather lounging & dreaming dining |
| 44 | 09/05/2024 | 🚀 The deals are skyrocketing - up to 50% off! |
| 45 | 08/07/2024 | 🛏Flash Sale - Up to 40% off daybeds, chairs & chaises |
| 46 | 07/28/2024 | 🏃 Hurry - last day to save up to 40%! |
| 47 | 07/16/2024 | 💥 Flash Sale deals up to 40% off! |
| 48 | 07/05/2024 | 🛍 Up to 50% off select Ready to Ship pieces! |

# EXHIBIT A

## Violative Joybird Emails

|    | Date       | Email Subject Line                                              |
|----|------------|----------------------------------------------------------------|
| 49 | 07/03/2024 | ⏰ Don't let the clock run out on 45% off!                      |
| 50 | 06/16/2024 | 📢 Last call! Up to 40% off                                     |
| 51 | 06/02/2024 | 🏃 ENDS TONIGHT: Deals up to 50% off!                           |
| 52 | 06/02/2024 | 🏃 ENDS TONIGHT: Deals up to 50% off!                           |
| 53 | 05/28/2024 | 🛋️ Up to 50% off select Ready to Ship pieces!                  |
| 54 | 04/28/2024 | Re: Your opportunity to save 40%                               |
| 55 | 04/16/2024 | 🪑 Outdoor furniture up to 45% off                              |
| 56 | 04/14/2024 | 🏃 Last Chance for 30% off sitewide!                            |
| 57 | 03/19/2024 | 🛏️ Flash Sale: Up to 40% off bedroom & storage items!          |
| 58 | 03/17/2024 | 🕯️ Last day to save 30% sitewide!                              |
| 59 | 03/17/2024 | 🛋️ The Style Event - save 30% sitewide                         |
| 60 | 02/29/2024 | 🛋️ 30% off sofas & sectionals is here!                         |
| 61 | 02/23/2024 | 🪑 Save up to 50% on these Ready to Ship pieces!               |
| 62 | 02/20/2024 | 🛋️ Up to 50% off select Ready to Ship pieces!                  |
| 63 | 02/11/2024 | 😌 Save up to 45% on cozy best sellers                          |
| 64 | 02/05/2024 | ⏰ Time is almost up on 30% off sitewide                        |
| 65 | 01/28/2024 | Enjoy Fresh Finds & save 30% sitewide!                         |
| 66 | 01/23/2024 | 🪑 Leather & dining pieces up to 40% off                        |
| 67 | 01/22/2024 | 👋 Say goodbye to up to 35% savings...                          |
| 68 | 01/08/2024 | 👀 Last day to save up to 40%!                                  |
| 69 | 12/28/2023 | 🎉 Year End Sale starts today! Up to 40% off                    |
| 70 | 12/27/2023 | 😵 Up to 50% off storage & accent pieces                        |
| 71 | 12/26/2023 | 🎁 Last day to unwrap 30% off sitewide                          |
| 72 | 12/15/2023 | 🎄 Save 30% sitewide during the Holiday Home Sale!              |

# EXHIBIT A

## Violative Joybird Emails

|  | Date | Email Subject Line |
|---|---|---|
| 73 | 12/03/2023 | 🥺 1 more day! Up to 45% off... |
| 74 | 11/24/2023 | 🥺 Up to 45% off best sellers?! |
| 75 | 11/18/2023 | 🤗 Up to 45% off? Yes please! |
| 76 | 10/29/2023 | 🥳 40% Off select best sellers? You got it! |
| 77 | 10/25/2023 | 🛏 Starts today: up to 40% off bedroom & sleepers! |
| 78 | 10/23/2023 | 🥺 35% off sectionals is ending?! |
| 79 | 10/18/2023 | Ready to entertain? Save up to 35%! |
| 80 | 10/02/2023 | 🤗 Save up to 35% when you update your living room |
| 81 | 09/27/2023 | 🎉 Save up to 35% on every room! |
| 82 | 09/27/2023 | Hey There - Want up to 35% Off the Pieces You Had Your Eye On? |
| 83 | 09/26/2023 | Psst!  Up to 35% Off Your Purchase |
| 84 | 09/21/2023 | 📊 Buy more, save more - up to 35%! |
| 85 | 09/20/2023 | ⚡Flash sale deals up to 40% off! |
| 86 | 08/28/2023 | Save up to 45% during our Labor Day Sale |
| 87 | 08/24/2023 | Labor Day Sale starts today - Save up to 45%! |
| 88 | 08/09/2023 | 😱 Outdoor & storage deals up to 40% off?! |
| 89 | 07/20/2023 | 🤝 30% off...since we're friends! |
| 90 | 06/29/2023 | Save up to 45% on every room of the house! |
| 91 | 06/26/2023 | Celebrate the 4th & save up to 45%! |
| 92 | 06/23/2023 | Up to 45% off best sellers?! 😱 |
| 93 | 06/14/2023 | Online Warehouse deals up to 50% off! |
| 94 | 05/24/2023 | Discover outdoor & indoor pieces up to 45% off! |
| 95 | 05/18/2023 | 🥺 Up to 45% off?? Shop Memorial Day deals! |
| 96 | 03/22/2023 | 🤗 Up to 50%?! Get the First Look... |

# EXHIBIT A

## Violative Joybird Emails

|     | Date       | Email Subject Line                                                 |
| --- | ---------- | ------------------------------------------------------------------ |
| 97  | 03/10/2023 | 🍀 Lucky You! Save Up to 40%                                        |
| 98  | 02/10/2023 | Up to 45% Our Most Loved Pieces!                                   |
| 99  | 01/23/2023 | 🏃 Hurry! Up to 40% Off Ends Tonight                                |
| 100 | 01/15/2023 | 💥Last Day For Up to 50% Off Leathers!💥                            |
| 101 | 12/26/2022 | 🕙 Time is Running Out to Save Up to 35%!                           |
| 102 | 12/16/2022 | 🎁 'Tis the Season to Save Up to 35%!                               |
| 103 | 12/12/2022 | ⏰ Time is Running Out on 30% Sitewide Savings!                     |
| 104 | 11/10/2022 | Black Friday is Here! Save Up to 45%!                              |
| 105 | 11/07/2022 | 🎁 Last Day to Save 30% Sitewide 🎁                                  |
| 106 | 10/27/2022 | Spruce Up Your Space & Save 30%!                                  |
| 107 | 10/23/2022 | Last Day: Snag That Sectional & Save 35%!                         |
| 108 | 10/13/2022 | Save Up to 35% for Fall! 🍂                                         |
| 109 | 10/11/2022 | Leather Up to 50% Off?! 🤩                                          |
| 110 | 10/08/2022 | Chic Wall Pieces and Lighting- 30% Off                            |
| 111 | 10/05/2022 | Classic Neutrals That are Anything but Basic + Save 30%           |
| 112 | 10/02/2022 | Seasonal Leathers to Warm Your Home, 30% Off                      |
| 113 | 09/29/2022 | Save 30% on Modern Glam Staples                                   |
| 114 | 09/26/2022 | Sink into Fall Seating Styles - Still 25% Off                     |
| 115 | 09/24/2022 | Dining Rooms That Impress + 25% Off Sitewide                      |
| 116 | 09/23/2022 | ⚡Flash Sale Happening Now | Up to 50% off                          |
| 117 | 09/22/2022 | Autumn Vibes at 25% Off                                           |
| 118 | 09/18/2022 | Fall into Velvet + Take 30% Off Sitewide                          |
| 119 | 09/14/2022 | Outdoor Dining? Save 30%                                          |
| 120 | 09/12/2022 | FLASH    SALE: Up to 45% Off Ends Tonight                         |

# EXHIBIT A

## Violative Joybird Emails

|     | Date       | Email Subject Line                                        |
|-----|------------|-----------------------------------------------------------|
| 121 | 09/08/2022 | End of Summer? No Problem: Take 30% off Sitewide          |
| 122 | 09/06/2022 | Flash Savings Save Up to 45% on All Outdoor               |
| 123 | 08/20/2022 | Staying Chic in Small Spaces + 30% off Sitewide           |
| 124 | 08/18/2022 | Throw Your New Favorite Rug in the Wash—Save 30%          |
| 125 | 08/16/2022 | A Backyard As Chic as You—30% off                         |
| 126 | 08/07/2022 | Apartment Size Seating: Up to 35% Off                     |
| 127 | 08/04/2022 | Cozy up for up to 35% off Sofas & Sectionals              |
| 128 | 07/30/2022 | Luxe Lounge, Seats 30% Off                                |
| 129 | 07/27/2022 | 30% Off Rattan Pieces to Weave Into Your Space            |
| 130 | 07/24/2022 | Sectionals CAN Have it all + Take 30% Off                 |
| 131 | 07/21/2022 | The Heat is On: 30% Off Sitewide Starts Today!            |
| 132 | 07/17/2022 | Your Last Chance to Get Up to 35% off...                  |
| 133 | 07/16/2022 | A Cozy Couch in a Modern Style + 30% Off                  |
| 134 | 07/07/2022 | Save 35% on Sophisticated Dining Silhouettes              |
| 135 | 06/30/2022 | Bring Your Living Room Outdoors + Take 35% Off            |
| 136 | 06/29/2022 | Perfect Your Patio: 35% off Sitewide                      |
| 137 | 06/27/2022 | Stylish & Functional - Organizational Solutions, 35% Off  |
| 138 | 06/23/2022 | Happy 4th: Save 35% off Sitewide Now!                     |
| 139 | 06/19/2022 | 25% off - Celebrate Summer Sale Ends Tonight!             |
| 140 | 06/16/2022 | Comfy Couch Customer Faves 30% off                        |
| 141 | 06/12/2022 | Maximize Coziness – 30% off Ends Tonight!                 |
| 142 | 06/11/2022 | The Velvet Touch — On Everything! Save 30%                |
| 143 | 06/05/2022 | Save 30% Get Recline-Ready for Summer                     |
| 144 | 05/30/2022 | One More Day: 35% off Sitewide Extended!                  |

# EXHIBIT A

## Violative Joybird Emails

| | Date | Email Subject Line |
|---|---|---|
| 145 | 05/26/2022 | Stylish Staycation on Your Patio + Save 35% |
| 146 | 05/25/2022 | Snag these Statement Tables, 35% off NOW! |
| 147 | 05/22/2022 | Reimagine Your Home, Inside and Out + Save 35% |
| 148 | 05/14/2022 | Natural & Modern: Rattan Pieces 30% off |
| 149 | 05/08/2022 | Spring Storage: Shop 30% off Friends + Family |
| 150 | 04/24/2022 | Plush, Lush Velvet Vibes–Take 30% |
| 151 | 04/18/2022 | The Bolder The Better: 30% off! |
| 152 | 04/15/2022 | 30% Off: A Piece that Gets More Luxurious With Time |
| 153 | 04/13/2022 | Check Out Your Favorite Comedian's Cozy Digs - Save 30% |
| 154 | 04/10/2022 | 30% Off! Sofas To Change With Your Mood |
| 155 | 03/19/2022 | 30% Off: Have you Seen Rooms like This? |
| 156 | 03/14/2022 | Tables To Tell Stories At – 30% Off |
| 157 | 03/11/2022 | 30% Off: Good Luck Sale Begins…Now! 🍀 |
| 158 | 02/27/2022 | Save 30% on Limitless Living Room Options |
| 159 | 02/25/2022 | Spring Sale Starts Today - Take 30% |
| 160 | 02/22/2022 | Snag Your Seat: 35% Off Ends Tonight |
| 161 | 02/21/2022 | Save 35% — Ends Tonight! |
| 162 | 02/17/2022 | Busy Brights or Tranquil Taupes? Take 35% |
| 163 | 02/15/2022 | Most Wanted: 35% off Our Best Leather Pieces |
| 164 | 02/11/2022 | 35% Off Presidents' Day Sale! 🇺🇸 |
| 165 | 02/10/2022 | Get VIP Access to 35% Off Sitewide |
| 166 | 02/07/2022 | Last Day to Save 30% on Home Must-Haves! |
| 167 | 01/28/2022 | Beds You Actually Enjoy Making: 30% Off |
| 168 | 01/01/2022 | New Fabrics for the New Year 30% off now! |

# EXHIBIT A

## Violative Joybird Emails

|     | Date | Email Subject Line |
| --- | --- | --- |
| 169 | 12/28/2021 | New Year, New Pieces - 30% off! |
| 170 | 12/12/2021 | Your Perfect Patio Awaits + Save 30% Sitewide |
| 171 | 12/03/2021 | It's The Most Wonderful Time — for 30% OFF! |
| 172 | 11/30/2021 | LAST. CHANCE. 35% off sitewide 🧨 |
| 173 | 11/29/2021 | Ends Tonight! 35% Off Sitewide + 50% Off Flash Sale |
| 174 | 11/27/2021 | Going Fast! 35% OFF SITEWIDE |
| 175 | 11/25/2021 | IT'S HAPPENING: 35% off sitewide sale |
| 176 | 11/24/2021 | Don't Wait! 35% off Dream Workspace |
| 177 | 11/15/2021 | Last Chance: 25% Off Sitewide |
| 178 | 11/12/2021 | 25% off Your New Bedroom! |
| 179 | 11/10/2021 | 25% off Sitewide: Cozy Up Sale Begins Today! |
| 180 | 11/08/2021 | Last Chance - 30% Sitewide Savings Ends Tonight! |
| 181 | 11/07/2021 | Chic Coffee Table Pairings | 30% Off |
| 182 | 11/04/2021 | Curl Up on these Cozy Hues for 30% off! |
| 183 | 11/02/2021 | 30% off Sitewide: Don't Snooze on Sleep-In Sale! |
| 184 | 10/31/2021 | Psst...Here's 30% Off |
| 185 | 10/24/2021 | 30% off Transformative Room Accents |
| 186 | 10/23/2021 | Velvet Comfort Dreams | Save up to 30% off |
| 187 | 10/16/2021 | Celebrate Fall: Up to 30% OFF |
| 188 | 09/30/2021 | Give It The It-Factor and Save 30% Sitewide! |